[ PHILADELPHIA, MAY 2D, 1840. ]

## STRAWBRIDGE'S APPEAL.

A mother, who was administrator of her deceased son, allowed in the settlement of the estate, for the support and maintenance of the son, for a period of sixteen years, under the circumstances of the case.

THIS was an appeal by Margaret Strawbridge from a decree of the Orphans' Court of Chester county, in the matter of the settlement of the accounts of the said Margaret, as administratrix of the goods of Alexander J. Strawbridge, deceased.

The circumstances of the case were as follows:

On the 22d day of September, A. D. 1819, Alexander J. Strawbridge assigned and transferred all his estate, real and personal, to Dr. Josiah Ankrim, James Strawbridge, and James Alexander, in trust to pay his debts; and if any surplus should be found after the payment of those debts, and the reasonable expenses and costs of the trustees, then upon the further trust that the said trustees, " or the survivors or survivor of them shall and do apply the rents,

(Strawbridge's Appeal.)

interest and profits of such surplus, to the reasonable support and maintenance of the said Alexander; and in the event of the rents, issues and profits of such surplus being insufficient for his reasonable support, then that they shall apply, from time to time, so much of the principal of such surplus towards his support, as they in their discretion shall deem right and necessary."

The trustees accepted the trust, sold the real and personal estate, and paid the debts. A balance remained of five hundred and four dollars and twenty-five cents immediately available; and there was a further sum of seven hundred and sixty dollars, payable to the said Alexander, on the death of his mother, Margaret Strawbridge, the appellant. Alexander J. Strawbridge died in May, 1838. His mother, the appellant, administered to his effects, and soon after settled with the trustees. In that settlement a charge of five hundred and forty dollars for boarding and lodging the decedent for several months in each year, for sixteen years was made and allowed. A charge was made by the trustees also of three hundred and seventy-five dollars, as a compensation for their services.

These two items formed the subject of controversy. The depositions of several witnesses were taken and set forth at length in the paper book, but it is not thought necessary to give their testimony here, as it is sufficiently stated in the opinion of the Court.

After argument by Mr. *Lewis* for the appellant, and by Mr. *B. Tilghman* for the appellee, the opinion of the Court was delivered by

KENNEDY, J.—It appears to us that the allowance of five hundred and forty dollars, made by the auditors in their report, to the accountant, for the boarding, lodging, and taking care of the testator, her son, in his lifetime, was perfectly just and reasonable, and such as she was entitled to have allowed to her, both in law and equity; and that the Court below, therefore erred in striking it out of the account. Although James Strawbridge, a brother of the testator, and both sons of the accountant, furnished the boarding and lodging, yet it appears clearly from the evidence that he did it at the instance and upon the credit of the accountant; and accordingly charged the accountant with the same. Part of the time he kept a regular book account of it against her. This he testifies to positively; and that such must have been the understanding of Alexander J. Strawbridge himself, would appear to be fairly deducible from the evidence of Dr. Ankrim, who, among other things, testifies that the accountant lived in the same house with James, her son, and that he had heard Alexander, the testator, speak frequently during the time that the accountant lived with James, of his, the testator's, living with his mother, the accountant. Alexander's thus

Vol. v.—72

(Strawbridge's Appeal.)

speaking of his *living with his mother,* and not with James, his brother, accords with the evidence of James, who says that he would not have permitted Alexander to have remained about his house, but to satisfy and oblige his mother, who was very desirous to have the care of Alexander, and to minister to his comfort as much as she could. It seems from the evidence, that Alexander was so addicted to intemperate drinking of intoxicating liquors, that he was rendered incapable of taking care of himself or of any thing belonging to him; and at the same time was illnatured, very offensive to others, and at times actually bereft of his right mind. Hence doubtless arose the great concern of his mother for him. But surely all this furnished no reason why she should support and maintain him at her own expense, when he had the means of paying for it. On the contrary, the urgent necessity which seems to have existed for her interference on his behalf, that he might not suffer and abuse himself beyond what she, by her influence could prevent, furnishes a most powerful reason why she should be fully remunerated for all that she did for him in this way, out of his estate. The father, who has the control and direction of the services of a child during its minority, may, therefore, well be considered as bound to support and maintain it during that period, if of sufficient ability to do so, out of his own estate, though the child may have an estate of its own, also amply sufficient for that purpose. But in such case this obligation on the part of the father, would cease upon the child attaining its majority. In the case of a mother, however, she having no such right to, or control over the services of her minor child, there does not appear to be any good reason why she should be under an obligation to support and provide for it at any time, as long as the child has an estate sufficient for that end of its own. And the Supreme Court of Massachusetts, in *Davies* v. *Howard,* (4 *Mass. Rep.* 97,) in an action against the sureties of the father, on a bond given by him upon his being appointed guardian of the estates of his minor children, conditioned for his faithful performance of the trust, where it appeared that the father was a man of but little property, and had supported his children during his guardianship, though without making any charge against them, or even manifesting any intention of the kind, the father being dead, permitted the sureties to raise an account, and to charge on behalf of the father, a reasonable allowance for the support and maintenance of the children. And although it is alleged against the claim here, that the accountant, during the lifetime of Alexander, never thought of, or intended making such charge; and that there could have been no understanding between him and her that any such was to be made; yet from the circumstances, the contrary may very fairly be inferred, because they do not necessarily tend to sustain such allegation; but go rather strongly to prove a case in which the law, as well as

(Strawbridge's Appeal.)

equity, would imply an undertaking upon the part of Alexander to make to his mother, a reasonable compensation at least, for the support and maintenance which she procured for him. The circumstances of such a charge never having been brought into view, in any of the settlements, which Alexander in person, during his lifetime, made with his trustees, is of no weight against it; nor does it show that the accountant at that time did not intend to make it, as has been alleged; because she was no party to any of these settlements: nor does it appear that she had any knowledge of them whatever, and therefore had no opportunity afforded her of making her claim known. But suppose, that she, during the life of Alexander, not knowing how his estate might hold out or meet his support, had intended to make no charge, I am far from thinking that, as it has turned out, she would or ought therefore, to be precluded from making it now; and the case of *Davies* v. *Howard* goes to show that she ought not; which was the case of a father and his minor children, and much stronger on that account than that of a mother and her son of full age. The rejection of this claim by the Orphans' Court is the only error that we perceive to have been committed; and therefore reverse their decree in this particular, and direct the five hundred and forty dollars to be allowed and credited to the appellant in her account, and that the decree of the Orphans' Court be affirmed as to all other matters embraced within it.

Decree accordingly.